Case 12-1486, Jackie King v. Mary Berghuis. Oral argument under seat 15 minutes per side. Mr. Gibbs with your helmet. Mr. Ginn, is that correct? Mr. Ginn, that's correct. May it please the Court. David Ginn, Court-Appointed Counsel for Appellant Jackie Rae King. I've reserved four minutes of my time for rebuttal. There are three basic issues in this case. There's the exhaustion issue, there's the EDPA issue, and there's the underlying due process issue. This Court only needs to reach the EDPA issue. And so I'm going to begin with that one. EDPA forecloses relief on a habeas claim if, but only if, the State Court has applied the correct legal standard and has done so reasonably. That's not what the State Court did here. Both parties agree on what the correct legal standard is in this case. A guilty plea is valid only if it's made knowingly, intelligently, and voluntarily, which means that the defendant himself must understand the likely consequences of the plea. Mr. King has alleged that he did not understand that his new sentences would run consecutive to his parole sentence. And he presented that claim to the State Court. Rather than addressing whether Mr. King did in fact understand that that was true, the State Court focused instead on its own understanding of what the prosecutor had said earlier. It focused on a fair interpretation of the prosecutor's statement that consecutive sentencing would not apply. And the State Court understood that to mean that only the two new sentences, the bank robbery sentence and the armed robbery sentence, would be concurrent. Now this violates EDPA's contrary to clause because the State Court applied a legal rule that's directly contrary to a legal rule that's been clearly established in Supreme Court precedent for decades. This is not a novel rule, the knowing, intelligent, voluntary standard. And that, under the Supreme Court's precedence, under Lafler v. Cooper, kind of most recently, but also under the Terry Williams v. Taylor cases, sort of the foundational EDPA case, that's enough to satisfy the contrary to prong, and that puts the EDPA re-litigation bar sort of to one side in this case. I'm a little, you know, the Supreme Court's jurisprudence about the knowing and voluntary nature of pleas doesn't really go into a point, doesn't go to a defendant's understanding of the effects of sentences already imposed that are outside the particular plea that's being discussed, does it? I mean, I read this record, and, you know, I'm thinking, well, why would anybody think that he was talking about the parole sentences? I mean, Mr. King is there. He's pleading guilty to two offenses. He's told that they will not be consecutive to each other. And why would he think that anything outside of what was going on was being discussed? I think it's important to separate the two issues here, Your Honor. So what Your Honor is talking about is the underlying due process issue, whether Mr. King's due process rights were violated when he was misinformed or not informed about the consecutive versus concurrent sentences. That's not, however, the relevant question under EDPA. The relevant question under EDPA is whether the state court identified the correct general legal standard and applied that standard. Where in Supreme Court precedent would we find the precedent that says a part of the voluntariness of the plea, a part of this plea proceeding as a constitutional matter is a discussion of circumstances outside the particular plea being entered. Do you understand what I'm asking? I do understand, and I don't think this court doesn't need to identify that specific legal rule in Supreme Court precedent. I think Lafler v. Cooper is a good example of this. So Lafler v. Cooper was a Strickland case, and the Michigan Court of Appeals in that case had actually recited the Strickland standard, but then it just totally failed to apply the standard. The Supreme Court held that that satisfied that mistake, the sort of complete failure to apply Strickland's very general standard, satisfied the contrary to prong of EDPA. And then it proceeded to apply Strickland de novo, and in what turned out to be a very sort of novel situation, I think in Lafler you couldn't have pointed to a preexisting Supreme Court precedent that applied Strickland to the, I think the issue there was the rejection of a guilty plea. So I think as that case shows and as the Terry Williams case shows, the EDPA question is just whether the state court correctly identified and applied the general legal standard. Here, just the general knowing, intelligent, voluntary standard viewed from the defendant's perspective. That's as far as you need to go for EDPA. Our argument, of course, is that the state court didn't even apply that general standard. It focused on sort of its own objective interpretation of what the prosecutor said. Well, let's try to put it another way. One way to view this record is sort of the way you would like us to view it, which is as containing an error about how his sentences were going to be run. Another way to look at this record is that he was not advised of the collateral consequences of a guilty plea to the offenses to which he was pleading. And the collateral thing was the requirement under Michigan law that any sentence received be consecutive to the paroled sentence. And that wasn't even really before the state court to advise him about, arguably. And so it's hard to see how, unless there's some constitutional requirement that he be advised about the effects of the current sentence with respect to previously imposed sentences, it's hard to see how you bootstrap that into an argument that he didn't plead voluntarily. Well, and here, so now we're shifting to the due process issue. And I think once, so if you set EDPA to one side, we argue the contrary to is met here. Well, I don't think it makes any difference whether you're talking about the due process issue or whether you're talking about the voluntariness of the plea. Well, for the due process issue, though, Your Honor, you can then look to this court's own precedence. You're not constrained to look at clearly established Supreme Court precedent in 2006 when the state court. Well, I still haven't gotten the Supreme Court case that says a part of the duty to advise a defendant with respect to his plea is the duty to advise him about collateral sentences. And I guess what I'm saying is you don't need to find that case. This court has a case, Smith v. United States, that says that. And that's the ultimate merits issue, which we argue should be resolved in the first instance by the district court. But the EDPA issue, and I think this is a key distinction here, the EDPA issue is just did or did not the state court identify and apply the correct general legal standards. Well, I don't get the, you're calling it an EDPA issue. I mean, EDPA provides the standard of review. And that's, I think, I actually think that's not right, Your Honor. I think this court in Rice v. White sort of explained the relationship between EDPA and the underlying habeas statute. And actually, the Ninth Circus decision, en banc decision in France v. Hazy, which we cite in our briefs, is, I think, the clearest explanation I found of this. I'm just finding it hard to buy into your analytical framework. But perhaps it's my limitation. Well, I would urge this court to read Lafler v. Cooper, I think, as the clearest Supreme Court precedent that explains just how this contrary to analysis works. I think it's a two-step thing. The first step is did the state court identify and apply the correct general legal standard, Strickland in that case, knowing intelligent and voluntary in this case. If it didn't, the contrary to prong is met. But that doesn't mean that the defendant is entitled to relief. If you're still just, you know, as it's always been since 1867 when Congress enacted the Habeas Corpus Act, the underlying question has always been is the prisoner detained in violation of the Constitution? And that's the due process question. It's the underlying 2241 question. EDPA is just sort of an overlay on top of that, a bar that applies only when the state court has adjudicated a claim on the merits. If it hasn't adjudicated a claim on the merits, then EDPA doesn't even apply in the first place. And then only if the state court identifies and applies the correct general standard and does so reasonably. So had the state court here said, I'm identifying knowing intelligent and voluntary. I know I have to look at it from the defendant's perspective. But I find based on precedence or based on my own reasoning that the defendant does not need to be advised of consecutive sentencing. I think then we'd be in a very different, it would be a very different case. We'd be in the unreasonable application category because the state court there would have identified the correct legal standard. And it would then have applied it in a way that I would be arguing is unreasonable, but it would be a much tougher case. Here, though, where the state court completely failed to apply the correct legal standard, that alone satisfies EDPA's relitigation bar and just removes it from the case. And I think because most of the Supreme Court's cases and most of this court's cases involve the unreasonable application prong of EDPA. It's easy to take, there's a lot of statements in the Supreme Court case law that says only an extreme malfunction in the state court process is enough to get relief under EDPA. But I think if you again look back at Terry Williams, the 2000 case that sort of first interpreted EDPA, it was very clear that contrary to an unreasonable application, there are different standards. There's sort of different language and they have to be applied differently. And in this case, contrary to, I think, is easier for us to meet than unreasonable application. You also attach some significance to the fact that some of the cases in this area, for example, involve a federal court not being held to have to advise a defendant of collateral state consequences. But you make the point this was all within one system. And I suppose hand in hand with that is the fact that there was apparently a misunderstanding as to the consequences, the long range potential consequences of this in terms of the so-called 90 day reference that's in the magistrate. It's sort of like this is a big deal about nothing because we're only talking about 90 days here. And if your point is valid, you say it's not necessarily the earliest date you might get out, but the date that you might be held to. That's correct, Your Honor. I don't have anything else. Did you have anything else? No, I think you, I've stated your position on that one. That's correct. And it ended up being a 30 year difference on the back end, which for a defendant like Mr. King, who has a pretty substantial prior history, there's no guarantee that he'll be paroled. So he could very well be held for the rest of his life. All right. Well, I'm not sure I'm going to try to pronounce your last name. Maybe you can help me with it. Gerville Rayash. Gerville Rayash. Gerville Rayash. Rayash. On behalf of Appley. Well, I'm going to start a place different where I was going to start because I think you've, the court's kind of honed in on one of the more problematic aspects of this appeal, and that is what claim are we talking about? It's not enough to just go into the state court and say my plea wasn't knowing and voluntary. You have to explain why. The explanation that was given to the state court was my plea is not knowing and voluntary because I was promised that my parole sentence would not run consecutive to the sentences that the court is imposing. That was the argument that was made in the motion to withdraw the plea. That is the argument that the counsel made throughout the hearing before the trial court. That's even the argument that was made to the district court, the federal district court. Never was the argument made that you should have told me that my parole sentence was going to be consecutive. I should have been told that. There should have been an affirmative statement about that. That's a completely different allegation, a different claim than saying I was promised something. The clearest indication of that is that you have different case law that applies to both situations. Boykin is a situation where the issue is did you put on the record all the information that was necessary so that we know that the defendant understood the direct consequences of his plea. Santabella was what was argued below and in the district court. In that case, it doesn't matter what was put on the record. If there was a promise that was made, it has to be kept. It doesn't even matter whether the consequences, whether it ultimately made any difference in the sentence that was received. The court in Santabella explained that the state can't come in and say, well, we made this promise, but really it was immaterial. The trial court said that our promise not to – in Santabella, the issue was that they had promised not to recommend a particular sentence. And they, in fact, did recommend that particular sentence. The left hand didn't know what the right hand was doing. The trial court on the ultimate habeas hearing said that basically that had no impact on its ultimate decision on the sentencing. So – and the court ultimately concluded that, well, it really doesn't matter. If the prosecution says that they're going to do something, they promised something in exchange for the plea, they've got to carry through with it. Well, that's a completely different analysis from the analysis that we're now engaging in, which is whether they were misinformed. Now, when the court granted a certificate of appealability, this question was stated very broadly. Did Mr. King understand that his parole sentence would be consecutive? But that question wasn't ever really presented to the state court. That wasn't the question. The question before the state court was, was there a promise of leniency?  Now, they found one allegation, an emotional withdrawal of the plea, where he said, well, I misapprehended the sentence. And they have, in the course of the briefing, brought us closer back to the it's not a question of silence on the record as to informing him. It's a question of misinforming him. And I agree with that distinction. That is a very important distinction. But there's also a distinction between misinforming and promising. There's one troubling aspect of this case for me is that I think there's, in my mind at least, there's little doubt that the so-called promise was relating to the offenses that were immediately before the court and that that promise was correct. On the other hand, there is an argument made by your opponent that there is sort of a subjective component to all of this, what the defendant understood. And just as I am convinced that the bargain that they thought they were making was kept, I'm probably equally convinced that the defendant was a little surprised at what turned out to be. So in that same vein, I thought it was somewhat interesting that the only relief really being asked for here in the brief is to have this go back. They're not asking for rid of habeas corpus, the issue, but to go back to have a hearing. And that hearing would be, I guess, to explore the subjective, what was in the defendant's mind. And I don't know if you agree that that's even relevant at this point in time. It may be. It may be relevant what the defendant thought he was promised. But I don't think you can't just come into court and say, I was promised this. You have to have something more to support it. And that's what the trial court, the state trial court, was getting at. It was basically saying, I just don't see anything here. One of the reasons I was sort of approaching this in the way I did is that the state court did not, I mean, the defendant, if I'm recalling correctly, and sometimes these habeas cases run together in a week of sitting, but if I'm recalling, well, they're not the only kind of case that runs together, but in any event, the defendant was not present in state court when his motion to withdraw the plea was discussed, and there was no evidentiary hearing. Is that right? Yeah, I believe that's true. Okay. And so when you're sort of looking at a record, and there's no real, there's no indication from the record we have that there was actually any sort of a promise made to the defendant other than the representation that the sentences in the proceeding before him would not be consecutive. So we really, I mean, Judge Guy might be right, but we really, we don't know from this record. And so it seems to me that what I was asking about really has, addresses sort of both elements of the two arguments that you say have been made. I mean, in the first instance, it addresses the question of what indication is there that there was the sort of promise that the defendant contended at one time, and then secondly, to what extent is there an obligation on the part of the state trial judge to, a constitutional obligation to advise him about sentences that relate to, about other, the effects of other sentences. And I think the questions I was asking really go to both of those arguments in that sense. Well, I only think that the question of whether parole sentencing is a direct consequence that the trial court had to inform the defendant of, or a collateral consequence that he didn't have to inform the defendant of, that only comes into play if they raised a Boykin claim in the state court to begin with. They never made that assertion that he should have been affirmatively told that. The assertion was, I was told something different. That's a different analysis, because it doesn't matter whether it's collateral or direct. We actually agree on this. It doesn't matter whether it's collateral or direct if you misinform the defendant. For instance, take the L. Nobani case, which is a perfect example of why it doesn't matter if there's two different sovereigns. You're dealing with the federal court on the one hand and a federal integration service on the other. And the collateral consequence of the plea was being deported. Now, if the court or prosecution had said, if you plea, you won't get deported, and then you get deported, that's a problem. But if they don't say anything about it, and then you get deported, it's not a problem under L. Nobani. That landscape's changed a little after Padilla, though, at least as to counsel's obligation. And we had a case yesterday in which they're arguing that the judge has the same obligation under Rule 11. You're right, and it has changed. Well, actually, there's an amendment to Rule 11. Oh, I know there is, yeah. The proposed amendment. I brought that up to illustrate the point, that it's a different analysis, different claims, different analysis. It all falls under the penumbra of, you know, was it knowing and voluntary, I think. But you've got to drill down to what actually was alleged. How would you characterize the claim that they made at the first instance? Well, the claim was that a promise of leniency was made, and here's where the promise was made in this document and in this statement that was made in the record. Well, and so your response to that issue is what? The trial court reasonably determined that there was no promise made in that statement in trial court about the parole sentence or any promise made about the parole sentence in the plea form. It doesn't say anything about a parole sentence. Yeah, okay. Nothing. There's nothing about a parole sentence in there. So he had to either – either he must have – in order for him to – he would have to presume, first of all, that they were talking about a parole sentence, and that presumption suggests that he knows something about the fact that parole sentences are normally consecutive, which is another explanation for why these are different claims we're talking about here, because if you're saying you promised me leniency, the leniency from what? Normally a consecutive parole sentence. But if the claim is, well, I just didn't know that parole sentences were consecutive, that's a completely different factual situation. And the claim that was certified for appeal here was very broad, which is why I brought up the fact – the fair presentation issue in the brief. Now, in the course of presenting this brought it closer to what the trial court was really addressing, and I think, frankly, the trial court addressed the misinformation claim in the course of resolving the promise of leniency because it was looking at, well, how – where are you getting this from that the parole sentence was going to be concurrent? And it looks at where – if there had been some discussion in the back room, then you would have to have an evidentiary hearing, but that wasn't the basis for the claim. The basis was this plea form and a statement made by the prosecutor, and the court looked at that and said there's just – there's no reference to that. I think I'm quoting almost directly. There's just no reference to that, that being the parole sentence and there being some bargain for it. And, in fact, the plea form said there's no sentencing agreement. So I think they fail there. I also think they fail regardless of whether AIPA applies because when they were at the stage of deciding whether the plea – they don't know whether the trial court is going to give life in prison or not. Granted, the statistics may be low that the trial court assigns that maximum sentence, but the case law is clear that if the sentence is within the maximum that you were told… You were informed of the direct consequences. He knew that he could be in prison for 30 years when he pleaded. It doesn't necessarily determine – it doesn't resolve all the parole eligibility and dates issue. Well, it does because he's eligible for parole in 15 years exactly from the date of his sentencing, and that was the minimum sentence that was assigned for the – There was an effect on the coming out end. There was an effect on the coming out end, but that effect was within the life sentence he thought he might get. If – it would have made a difference if he had had – if he had tacked on an additional minimum sentence. I think then it might have made a difference if the trial court said, are you getting 15 to 25 years for the crimes that have been committed? 15 to 25 for one, 10 to 20 for the other, but they're concurrent, so it's effectively 15 to 25. But now because it's a parole sentence, it's actually 20 to 30. That would make a difference, not because it was 30 years because he knew he could get that. He just didn't know what the trial court was going to give him. He knew he could get up to life, but because it became 20 minimum and that wasn't one of the minimums, that might have had an effect there. Now, I – I trust you agree with your opponent that because the disposition by the Michigan Court of Appeals and the Supreme Court was summary that the last reasoned decision is that of the trial court. No, actually, I don't agree. Okay. But I don't think that there's – I don't – I think if there's a close question as a matter of law, that would be it. I'm not sure where the Supreme Court would come out on that if it were to go up to the Supreme Court. I mean, you have Richter on the one hand that says there's a presumption that when you have an unreasoned decision that it was – that it was a decision on the merits for a reason – you have to read that into that decision. What they want is a presumption that if the trial court relied on an analysis that is an unreasonable application or contrary, that the Court of Appeals did too. I don't think that's a fair presumption. Well, it may not be, but if it isn't, it requires us then to do the reasoning that the Court of Appeals decided not to do. Well, that's true. But that's what Richter requires, so it wouldn't be an unusual posture for the court to be in. Yeah. All right. We'll hear from Mr. Guillen. Thank you. Thank you, Your Honors. I think Judge Guy actually kind of got to the crux of the matter here. We're asking on appeal just for very narrow relief. Our claim is very narrow. The only question we're asking this court to decide is did the state court identify and apply the correct governing legal standard, general legal standard from the Supreme Court's precedents. The reasons we've gone over, we think the state court did not. Now, again, that doesn't necessarily entitle Mr. King to relief, but we think those issues, the issues about whether the fact that he was informed of the maximum sentence sort of categorically forecloses any due process claim based on the consecutive concurrent within that sentence or the direct collateral, all of that is best fleshed out in the district court in the first instance. No court, Your Honors, has ever addressed any of these what are fairly, I think, described as complicated due process issues about what the defendant needs to understand. And in addition, not just what the court needs to sort of affirmatively tell the defendant, but what happens if, from the defendant's perspective, he's misinformed by the prosecutor. As we pointed out in our reply brief, there's, of course, a distinction between not being told something and affirmatively being kind of misinformed about something. And the sentencing guidelines cases, I think, illustrate that, where you don't have to be told what your sentencing guidelines range is going to be. But if you're affirmatively misadvised about the applicable sentencing guideline range, that can invalidate your plea. How are you going to get around culling the pinholster and get the relief you request? So pinholster, I believe, was an unreasonable application case. Again, I don't remember the exact facts of that case, but I assume the state court there had correctly identified the governing standard and had just applied it in a way that the prisoners agreed with. What you're basically asking for is an opportunity to present evidence that was not available to the state court. And I just don't see—it's hard for me to see how you get that at this point, given where we are. Well, AEDPA—I think it's important. AEDPA marked a very important shift in the law of habeas, but it marked a limited shift. I think Richter, you know, and other cases sort of make that point clear, where AEDPA only applies within its scope. So on the evidentiary hearing thing, if the state court either has never adjudicated the claim in the first place, you're certainly not bound by AEDPA, and you could possibly get an evidentiary hearing if you would be entitled to an evidentiary hearing under the ordinary standards in federal court. You're just sort of back into the pre-AEDPA days, where an evidentiary hearing was by no means automatic. But if you met the requirements, then you could still get one. And I think the key thing here for Mr. King is that he's never had an opportunity to fully explain how he understood this comment by the prosecutor, which I think everybody at every stage of the case has agreed is at the very best ambiguous. You know, the prosecutor just said consecutive sentencing does not apply to a layperson like Mr. King. I think it's very easy to see how he would understand that to mean all of my sentences are going to be concurrent, not just these two new robbery sentences. So I think that's why it's important to allow Mr. King to go back to the district court to kind of fully flesh this out. And it could very well turn out that, you know, as people ask questions of him, maybe it'll turn out that his counsel did, in fact, advise him about the consecutive concurrent sentencing, or maybe there'll be some factual bar to relief. But he's never had that opportunity yet, and I think we ask this court to give him that opportunity. Okay. All right, we thank you both for your argument. We'll consider the case carefully. Mr. Ginn, I note you were appointed under the Criminal Justice Act to represent Mr. King, and we appreciate very much your having taken the appointment and your zealous advocacy on his behalf. Thank you. It's a pleasure. Thank you.